# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0553-19T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

R.B.,

    Defendant-Appellant.

_____

Submitted December 9, 2020 – Decided January 25, 2021

Before Judges Ostrer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FO-01-0164-19.

Neil Law, attorneys for appellant (Durann A. Neil, on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Mario C. Formica, Deputy First Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a bench trial on August 26, 2019, Judge Susan F. Maven found defendant R.B.[1] guilty of the disorderly persons offense of contempt, N.J.S.A. 2C:29-9(b)(2), and the petty disorderly persons offense of harassment, N.J.S.A. 2C:33-4(a). We affirm.

The trial evidence reveals defendant was in an intimate relationship for nearly a year with C.H. The couple ended their romantic relationship in December 2018 but continued living together as roommates in separate bedrooms. On February 6, 2019, C.H. obtained a temporary restraining order (TRO) against defendant.

At approximately 3:00 p.m. on February 8, 2019, a police officer escorted defendant back to the apartment he previously shared with C.H., so defendant could retrieve his personal belongings. C.H. testified she normally would leave for work around 3:05 p.m., and defendant was aware of her schedule. C.H. estimated defendant and his police escort left her apartment around 3:20 p.m. Although she believed she was late for work, C.H. testified that as she drove to work on February 8, she realized she left her sweater behind at the apartment. Therefore, she returned to her apartment to retrieve her sweater. According to

---

[1] We use initials to refer to defendant and the victim to shield the victim's identity. R. 1:38-3(c)(12).

A-0553-19T3

her testimony, she entered her home, recovered her sweater, and "was getting ready to get back in [her] car when [R.B.] pulled up again and proceeded to say, 'I'm only getting started if you think this is over with,' and saying a bunch of other things, just being mean and hateful." No police escort was with defendant when he returned to C.H.'s residence.

C.H. immediately left the scene and drove to work. After she finished her shift, C.H. filed a report with the police, detailing defendant's violation of the TRO. Subsequently, the trial court dismissed the TRO for lack of proofs,[2] but the State pursued a complaint against defendant for contempt and harassment, based on the February 8 incident.

Defendant's trial occurred on August 26, 2019.[3] C.H. was the only witness to testify at the hearing. During cross-examination, defense counsel attempted to impeach C.H. by focusing on the time she purportedly left her apartment on the date of the incident, and the time she arrived at her place of employment.

---

[2] Following another incident between the parties, C.H. obtained a TRO against defendant on February 24, 2019. On March 13, 2019, the trial court granted C.H. a final restraining order (FRO).

[3] During the trial, Judge Maven agreed to address not only the alleged violation of the February 6, 2019 TRO, but also an alleged violation of the March 13, 2019 FRO. Judge Maven found defendant not guilty of violating the March 13, 2019 FRO, so we confine our comments to that portion of the trial involving the February 8 incident.

A-0553-19T3

C.H. could only approximate when she left for work on February 8, and more than once, testified she could not remember when she "clocked in" to work later that day. As he continued his cross-examination, defense counsel marked for identification a computer-aided dispatch (CAD) summary from February 8, 2019 from the Atlantic City Police Department. The State objected to its admissibility, arguing C.H. "isn't the appropriate witness to be introducing the CAD." Judge Maven allowed defense counsel to pursue additional cross-examination regarding the timing of the events on February 8.

Defense counsel next referred to a February 8, 2019 timesheet from C.H.'s place of employment. Again, the prosecutor objected to the admissibility of the document, and advised the court that neither the CAD nor C.H.'s timesheet was provided to the State prior to trial. Additionally, C.H. testified she had not authorized the release of her employment records.

In barring the admission of the CAD, the judge stated:

> if you had an officer here to testify about the CAD report, they would be able to testify about the accuracy of the input by someone who's back at the office inputting in whatever is being told. So, you know, I don't know how reliable it is to say that the times on those CAD reports are the exact time that the officer did things. It could be the time that the . . . dispatcher . . . typed it in, because . . . that's a person that does that.

A-0553-19T3

In response, defense counsel acknowledged he did not have an officer present. The following exchange ensued:

> The Court: Well, all you're going to have then is her time frame as to her estimate as to when she left the house.
>
> Defense counsel: That's all I need.
>
> The Court: Okay, well, that's what you have.

Defendant did not attempt to introduce C.H.'s timesheet in evidence. Furthermore, he did not seek an adjournment to secure any witnesses who could lay the foundation for the admissibility of either the timesheet or the CAD. At the conclusion of trial, Judge Maven credited C.H.'s testimony and found defendant guilty of contempt for violating the February 6, 2019 TRO; the judge also found him guilty of harassment.

For the first time on appeal, defendant argues his "due process and rights to a fair trial protected under the Sixth and Fourteenth Amendments to the United States Constitution were violated by the court barring the introduction of exculpatory evidence." We disagree.

Generally, "[e]videntiary decisions are reviewed under the abuse of discretion standard because . . . the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010) (citing Green v. N.J. Mfrs. Ins.

Co., 160 N.J. 480, 492 (1999)). "And, as with like determinations also entrusted to the sound discretion of the trial court, 'a reviewing court should uphold the . . . findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record.'" Id. at 384 (quoting MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007)).

"Generally, a police report is admissible as a record of a regularly conducted activity, commonly known as a business record, N.J.R.E. 803(c)(6), and as a public record, N.J.R.E. 803(c)(8)." Manata v. Pereira, 436 N.J. Super. 330, 345 (App. Div. 2014).

> A police report may be admissible to prove the fact that certain statements were made to an officer, but, absent another hearsay exception, not the truth of those statements . . . . However, to secure its receipt into evidence, the proponent is required to present a custodian of records, if not the particular officer who prepared the report.
>
> [Id. at 345-46.]

Here, it is uncontroverted defense counsel produced no witness who could testify about the preparation or veracity of the CAD. Additionally, he attempted to elicit such testimony through an improper witness, namely, C.H. Since it was unclear whether the CAD was prepared in accordance with regular practice,

6

Judge Maven could not confirm the reliability or trustworthiness of the contents of the CAD and properly barred the proffered material.

Regarding C.H.'s timesheet, it is well established that a trial court "retains the power to bar a business record if 'the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.'" Id. at 346 (citing N.J.R.E. 803(c)(6)). Even if we assume defense counsel legitimately procured C.H.'s timesheet, as assumption which cannot be gleaned from the record, it is evident defense counsel failed to produce a witness who could lay the proper foundation for C.H.'s timesheet to be admissible as a business record. He could not rely on C.H.'s testimony for the admission of the timesheet, as she stated multiple times during cross-examination that she could not recall when she clocked in at her job on February 8, 2019.

"Cross-examination relating to a witness's credibility need not be based on evidence adduced at trial." State v. Martini, 131 N.J. 176, 255 (1993), overruled on other grounds, by State v. Fortin, 178 N.J. 540 (2004). However, a question posed during cross-examination is inappropriate where "no facts concerning the event on which the question was based were in evidence and the [questioner] made no proffer indicating his ability to prove the occurrence." State v. Rose, 112 N.J. 454, 500 (1988). Stated differently,

"[i]t is improper 'under the guise of "artful cross-examination," to tell the [fact-finder] the substance of inadmissible evidence.'" United States v. Sanchez, 176 F.3d 1214, 1222 (9th Cir. 1999) (quoting United States v. Hall, 989 F.2d 711, 716 (4th Cir. 1993)) . . . . "The reason for this rule is that the question of the cross-examiner is not evidence and yet suggests the existence of evidence . . . which is not properly before the [fact-finder.]" State v. Spencer, 319 N.J. Super. 284, 305 (App. Div. 1999).

[Manata, 436 N.J. Super. at 348.]

Given these principles and our deferential standard of review, we are persuaded Judge Maven did not abuse her discretion in barring defense counsel from introducing either the CAD or C.H.'s timesheet in evidence.

To the extent we have not addressed defendant's remaining contentions, we are satisfied they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0553-19T3